**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| PLANNED PARENTHOOD OF GREATER OHIO, and PLANNED PARENTHOOD SOUTHWEST OHIO REGION,<br><br>        Plaintiffs,<br><br>    v.<br><br>RICHARD HODGES, in his official capacity as Director of the Ohio Department of Health, and TIMOTHY INGRAM, in his official capacity as Commissioner of Hamilton County Public Health,<br><br>        Defendants. | Civil Action No. 1:16-cv-539<br>Judge Michael R. Barrett |

## THIRD DECLARATION OF IRIS E. HARVEY

1.      I am the President and Chief Executive Officer ("CEO") of Planned Parenthood of Greater Ohio ("PPGOH").  In addition to serving as the President and CEO of PPGOH, I am the President and Planned Parenthood Associates of Ohio ("PPAO").  I make this declaration in support of the Opening Trial Brief filed by PPGOH and Planned Parenthood Southwest Ohio Region ("PPSWO").

2.      PPGOH engages in various activities to ensure the protection of a woman's right to safe and lawful abortion.  We launch advocacy campaigns such as the "Strong Enough to Listen, Brave Enough to Share" initiative designed to reduce the negative stigma around abortion in Ohio and provide Ohioans with the tools they need to support women who choose to have an abortion.  We also engage in education and awareness activities designed to educate the public about the lack of access to safe and lawful abortion and legislative efforts to restrict access to abortion care.  We further advocate for a woman's right to safe and lawful abortion by providing

information on college campuses and community health fairs about the importance of reproductive rights and by working with other organizations to educate the general public, as well as target populations, about these rights.

3.     PPGOH does not use any government funds to advocate for safe and lawful abortion. In fact, PPGOH scrupulously separates all government funds from all abortion care and abortion advocacy.

4.     The services and programs affected by Section 3701.034 have nothing to do with abortion. The contours of these programs are highly structured according to federal and state specifications, and abortion is not discussed under any of these programs Although the State has suggested that, hypothetically, a program participant could become pregnant, express uncertainty about her pregnancy, ask program staff what her options are, and receive information and counseling about all options for her pregnancy, I am not aware of such a situation happening under the programs affected by Section 3701.034.

5.     Prior to 3701.034, providers were selected to receive government funding under the affected programs based on their ability to deliver services.

6.     If Section 3701.034 were to go into effect, it would diminish PPGOH's core mission of ensuring access to reproductive health care and education. The programs and services affected by Section 3701.034 are important vehicles through which PPGOH delivers care and ensures continuity of care. And PPGOH could not readily reconstitute those programs if Section 3701.034 were allowed to take effect and then were later invalidated after the end of this litigation. Without funding from those programs, PPGOH will be constrained in its ability to offer free services, such as screening for sexually transmitted diseases, HIV, and breast and cervical cancer, and end the affected education programs. Furthermore, by disqualifying

PPGOH from reproductive health services, the State jeopardizes PPGOH's ability to provide continuous, comprehensive care to the Ohioans who rely on them for that service.

7.     It will also lose access to certain communities and forums.  For example, if deprived of its status as a PREP provider, PPGOH will not have access to the juvenile justice and foster care systems to provide needed information to those who teach teenagers about healthy relationships.  Plaintiffs could no longer access these underserved target populations, and would no longer be able to help educate these young people about sexual and reproductive health, prevention of unintended pregnancies, and healthy relationships, as Congress intended when it funded the program.

8.     Section 3701.034 also constrains PPGOH's ability to provide care outside the affected programs.  If the State cuts off funding under the STD Prevention Program, Minority HIV/AIDS Initiative, and Breast and Cervical Cancer Program, PPGOH will still aim to make those valued services affordable for low-income patients. Title X funding subsidizes these services on a sliding-fee schedule.  Approximately 14% of our patients qualify for free services under Title X; for others, even those entitled to reduced-fee services under Title X, the requirement to pay even some fee is likely to deter them from requesting vital and life-saving services such as breast and cervical screening, HIV screening, and infertility prevention through STD screening.   Moreover, PPGOH has access to only a finite amount of Title X funds in any year; using Title X funds to provide tests previously covered under the affected programs will force PPGOH to take funds away from all  other preventive health care and family planning (birth control) service programs currently subsidized by Title X funds.

9. In 2015, PPGOH provided 1,870 abortions at its surgery center in Columbus and 2,796 at its surgery center in the Cleveland area. In 2014, PPGOH performed 1,477 abortions in Columbus and 2,161 in the Cleveland area.

I state under penalty of perjury that the foregoing is true and correct.  Executed on July 18, 2016.


/s/ Iris E. Harvey                                    July 18, 2016
Iris E. Harvey                                        Date