```
 1        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
 2                  WESTERN DIVISION

 3
    PLANNED PARENTHOOD OF        ) Case No. 1:16-cv-539
 4  GREATER OHIO, et al.,        )
                                 )        Judge
           Plaintiffs,           ) Michael R. Barrett
                                 )
 6                               )
             vs.                 )
 7                               )
    RICHARD HODGES, et al.,      )
 8                               )
           Defendants.           )
 9
                   - - -
10

11      Deposition of STANLEY K. HENSHAW, Ph.D.,

12  taken on behalf of the Defendants, pursuant to the

13  stipulations agreed to herein, before Sarah A.

14  Bowers, Notary Public, at K&L Gates, LLP, 4350

15  Lassiter at North Hills Avenue, Suite 300, Raleigh,

16  North Carolina, on the 13th of July, 2016,

17  commencing at 9:29 a.m.

18

19

20

21

22

23  Reported By: Sarah A. Bowers

24  Job No: 110133

25
```

Page 2

1     STANLEY K. HENSHAW, Ph.D.
2  APPEARANCE OF COUNSEL:
3
4     On Behalf of the Plaintiffs:
5        Kimberly Parker, Esq.
         WilmerHale
6        1875 Pennsylvania Avenue Northwest
         Washington, DC 20006
7
8
9     On Behalf of the Defendants,
            Via Teleconference:
10       Ryan Richardson, Esq.
         Ohio Attorney General's Office
11       30 East Broad Street
         Columbus, OH 43215
12
13
14  Also present:  Anya Olsen
            Jennifer Brandon, Esq.
15             (Video conference)
            Stephanie Simon
16             (Video conference)
17
18
19
20
21
22
23
24
25

Page 3

1     STANLEY K. HENSHAW, Ph.D.
2           CONTENTS
3
4  THE WITNESS:  STANLEY K. HENSHAW, Ph.D.
5  Examination   By Whom         Page Number
   Direct     Ms. Richardson          4
6  Cross      Ms. Parker              41
7
         INDEX OF EXHIBITS
8
   Number    Description      Page Marked
9  Exhibit 1   Expert Report         4
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1        STANLEY K. HENSHAW, Ph.D.
2  _____
3  Whereupon,
4        STANLEY K. HENSHAW, Ph.D.,
5        having been first duly sworn,
6        was examined and testified
7        as follows:
8  _____
9        (HENSHAW EXHIBIT NUMBER 1
10       MARKED FOR IDENTIFICATION)
11 EXAMINATION BY MS. RICHARDSON:
12 Q    Good morning, Dr. Henshaw.
13 A    Good morning.
14 Q    We met via video just a moment ago.  But for
15      the record again, my name is Ryan Richardson,
16      And I'm an attorney at the Ohio Attorney
17      General's office.  I'm here today in this case
18      representing the defendant, the Ohio
19      Department of Health.
20      Dr. Henshaw, I know that you have been
21      deposed many times before today, but I'll take
22      just a moment to remind you of a few of the
23      basic ground rules.  As you know, I'll be
24      asking you questions today and the court
25      reporter will be taking down my questions and

Page 5

1        STANLEY K. HENSHAW, Ph.D.
2      your answers.  So it's very important that we
3      answer and speak audibly and without reference
4      to any visual gestures or face nodding.
5         It's also important that we not speak at
6      the same time.  And that's going to be
7      particularly important today because we're on
8      video, and so there may be a little bit of a
9      delay.  So I will be careful to make sure to
10     wait until you have answered the question
11     before I ask my next question, and if you can
12     also be careful to wait until I finish my
13     question to give me an answer.
14        If at any point in time you do not
15     understand a question that I have asked, just
16     let me know and I'll be happy to rephrase.  If
17     you do answer the question I have asked, I
18     will assume that you understood it.  Is that
19     fair?
20 A    That's fine.
21 Q    I don't expect that we will be very long
22     today, but if you need a break at any point in
23     time, just let me know.  All that I would ask
24     is that you wait until you have answered the
25     question that is pending before we take a

Page 6

STANLEY K. HENSHAW, Ph.D.
1
2   break.
3   A   Fine.
4   Q   Are you under -- thank you.
5       Are you taking any medications or is there
6   any other reason today which you wouldn't be
7   able to answer my questions completely and
8   truthfully?
9   A   No, there isn't.
10  Q   Any other questions before we get started?
11  A   No.
12  Q   So I'd like to begin just by talking a little
13      bit about your background. And I know it's
14      extensive so we won't go through it in detail
15      today. I will ask you to refer --
16      I understand that you have in front of you
17      what's already been marked as Henshaw Exhibit
18      1, is that correct?
19  A   That is correct.
20  Q   And is that a copy of your expert report that
21      was submitted in this case?
22  A   Yes, it is.
23  Q   And attached to that expert report, is there a
24      copy of your CV?
25  A   Yes, there is.

Page 7

STANLEY K. HENSHAW, Ph.D.
1
2   Q   And so I'll direct your attention then to the
3       CV in front of you. And I would just ask, is
4       this a current copy of your CV?
5   A   This is a current copy, yes.
6   Q   And it looks like, up in the corner, there is
7       a what I assume is a date. It says, "1/16."
8   A   Yes. That's when it was last updated.
9   Q   So it was updated in January of this year?
10  A   Yes.
11  Q   And since January of this year, have there
12      been any updates or changes to anything that's
13      included in your CV?
14  A   No.
15  Q   And so, I'd like to ask you then about your
16      current position. It says that from 2000 to
17      currently, you have been a "consultant for
18      various nonprofit organizations on research
19      concerning fertility, control services and
20      behavior." Did I read that correctly?
21  A   Yes.
22  Q   And can you just describe for me a little bit
23      of what that means. What is your current
24      professional focus?
25  A   Currently, my professional work is reviewing

Page 8

STANLEY K. HENSHAW, Ph.D.
1
2   research proposals for nonprofit
3   organizations. One is the Society of Family
4   Planning. The other is a unit of the
5   University of California in San Francisco.
6   Q   And are there any other nonprofit
7       organizations that you work with routinely in
8       that role?
9   A   No.
10  Q   What types of research proposals do you
11      review?
12  A   This is research about contraception and
13      abortion services, primarily.
14  Q   And what specifically is your role with
15      respect to the research proposals that they
16      submit?
17  A   These two organizations both send the
18      proposals to outside reviewers who then
19      suggest improvements and approve or do not
20      approve the proposal which is then funded by
21      the organizations if it's approved.
22  Q   So would this be similar to like essentially
23      grant proposals to fund research, is that
24      accurate?
25  A   Yes.

Page 9

STANLEY K. HENSHAW, Ph.D.
1
2   Q   And so, do you help them in the process of
3       creating the research proposals that then they
4       submit?
5   A   Not creating. The reviewers often have a lot
6       of ideas about how the proposal could be
7       improved. Or if it's not a good proposal,
8       suggestions for other kinds of research the
9       applicant could do, in the case of one of the
10      organizations.
11  Q   And are you one of the reviewers then that
12      will ultimately determine whether they get
13      funding, or do you assist the organizations in
14      preparing or responding to edits from the
15      reviewers?
16  A   Well, the reviewers make recommendations and
17      the organizations make the final decision
18      about what to fund.
19  Q   And which organizations are the funding
20      organizations?
21  A   As I said, those two organizations that I
22      review for, the unit of University of
23      California, San Francisco and the Society of
24      Family Planning.
25  Q   Okay. So I think I was confused. I think I

3 (Pages 6 to 9)

Page 10

STANLEY K. HENSHAW, Ph.D.
understand now. But the two organizations that you consult with are the organizations that provide funding, they are reviewing research proposals that have been submitted to them for funding and you assist the reviewers; is that correct?

A That is correct.

Q Thank you.
Thank you for bearing with me there. I appreciate it. And so, I would like to talk about specifically the work that you have done in connection with this case.
When were you retained as an expert in connection with this case?

A I'm not good at remembering dates. It was earlier this year.

Q And feel free to just give me a ballpark estimate, a general month or even season.

A Well, my first actual work on it was just before the report was dated, and the date of the report is June 21st. So it would have been in the month or two before June 21st when I actually did any work on it. And I don't think I knew about the case too long before

Page 11

STANLEY K. HENSHAW, Ph.D.
that.

Q So would it have been January, February that you were retained or would it have been later than that?

A Well, as I say, I don't always remember these things, but as I recall, it was later than that.

Q So sometime within the last several months?

A Yes.

Q And who contacted you about becoming involved in this case?

A I think it was Planned Parenthood attorneys.

Q Who was it -- sorry. Go ahead.

A I'm sorry. I don't remember which one it was.

Q Do you know whether these were attorneys for one of the two or both of the two plaintiffs in this case, which are Planned Parenthood of Greater Ohio and Planned Parenthood of Southwest Ohio?

A No. The people who contacted me were attorneys for the Planned Parenthood Federation of America.

Q And if I refer to that today as PPFA, would we both understand we're talking about Planned

Page 12

STANLEY K. HENSHAW, Ph.D.
Parenthood Federation of America?

A Yes.

Q So counsel for PPFA contacted you to ask you to become involved as an expert in this case?

A That is correct.

Q And what specifically were you asked to do in connection with this case?

A Well, I was asked to produce the expert report. I have done this before, so I knew what was expected.

Q And you -- when you say you have done this before, what do you mean?

A I did similar work in cases in Alabama and Wisconsin.

Q And did Planned Parenthood Federation of America ask you to do any specific analyses or studies unique to this litigation?

A No.

Q What did -- what did counsel for -- well, let me ask this a different way.
At the time that you agreed to become involved in this case, what did you understand this case to involve?

A The case was explained to me, was the Ohio

Page 13

STANLEY K. HENSHAW, Ph.D.
statute that would cut off Medicaid or state support to any organization that provides or promotes abortions. This would include Planned Parenthood, so that Planned Parenthood would then have the choice of giving up its abortion work or giving up any financial support from the State of Ohio.

Q And did you at any point in time review the statute that's being challenged in this case?

A No, I didn't.

Q Sitting here today, have you at any point in time reviewed the statute that's being challenged in this case?

A No, I haven't reviewed the statute.

Q So is it fair to say then that you don't have a sense sitting here today of how that particular statute might compare or contrast to statutes that may have been involved in your previous cases where you have served as an expert?

A Well, it's a -- just from the face of it, as I described it, it's different from the statutes in the other cases where I was an expert.

Q How so?

Page 14

STANLEY K. HENSHAW, Ph.D.

A This statute gives the plaintiff the option of giving up their abortion services or giving up state support. The other statutes had to do with requiring abortion providers to have hospital privileges in the local area where the services were provided. And I think there was some other provisions in those other cases, the statutes in those other states.

Q And so, have you done any analysis of how those differences in the statutes might impact your opinions and analyses reflected in your expert report?

A No.

Q And so, I would like to refer you to your expert report. And we're just going to spend a little time going through some of the items in here. I would direct you first to the Paragraph 1 on Page 1 of what's been marked as Exhibit 1. And I would just ask you generally if you could help me understand.

It states here that you are -- you consult on matters related to reproductive epidemiology; is that correct?

A That is correct.

Page 15

STANLEY K. HENSHAW, Ph.D.

Q Can you just help me understand a little bit about what reproductive epidemiology consists of?

A I think it's easiest if I describe some of the work that I have done. I have done work on abortion rates and differences between different areas in abortion rates, trends in abortion rates, teenage pregnancy, rates of sexual activity among teenagers. Some of the work has been comparing the U.S. to other countries.

I have done work, also, on factors that influence the provision of abortion services and, also, on the kinds of women who have unintended pregnancies and opt to have abortions.

I also did an important paper on rates of unintended pregnancy describing the kinds of characteristics that are associated with higher or lower rates of unintended pregnancy.

Q And has any of your -- any of the work that you have just described or any other work focused specifically on the State of Ohio?

A No.

Page 16

STANLEY K. HENSHAW, Ph.D.

Q And I believe you already testified you did not do any analyses or studies specific to this litigation; correct?

A That is correct. The only thing I did was check the distances from Cincinnati and Columbus to other cities where abortion services are available.

Q And so, I'm sorry. You checked the distances from abortion facilities to where? I apologize. I didn't catch the end of your answer.

A To other cities where there are also abortion services.

Q So you said you checked the distances between abortion facilities and other cities, is that -- did I understand that correctly?

A The distances from Cincinnati and Columbus to other cities with facilities.

Q And how did you determine which cities have facilities?

A For the most part, I have known it from my experience working with abortion services, but this was confirmed by the attorneys who told me where services were available.

Page 17

STANLEY K. HENSHAW, Ph.D.

Q So the attorneys provided you with a list of facilities that provide abortion services in the State of Ohio; is that correct?

A Well, more the cities where the services were available. I don't think I know the names of the facilities, but I know that Columbus has, what, two facilities, one of which is Planned Parenthood.

Q And did you do any independent research to determine the location of other facilities that provide abortion services in or near Ohio?

A No, I didn't.

Q Is it your understanding that counsel just provided then a list of facilities in particular cities rather than a comprehensive list of abortion facilities in the State of Ohio?

A That is correct.

Q And for the cities, I believe you mentioned Columbus and Cincinnati. Were there other cities that counsel included in the list that was provided to you in this case?

A There's a facility in Dayton and facilities in

Page 18

STANLEY K. HENSHAW, Ph.D.

1  Toledo, Cleveland, and Akron area that I know
2  of.
3  Q   And you don't know whether there might be
4      facilities that were not included on the list
5      that counsel gave you in connection with this
6      case; correct?
7  A   I believe they gave me correct information,
8      but I can't confirm that based on my own
9      individual investigations.
10 Q   In other words, you have not independently
11     verified the information that was provided to
12     you by counsel about the number and location
13     of facilities that provide abortions in those
14     cities?
15 A   That is correct.
16 Q   And so, I would ask you to take a look at
17     paragraph 2, please, of your expert report.
18 A   Yes.
19 Q   And in the second sentence of that paragraph,
20     it says, "Specifically, the act provides that
21     if any entity in Ohio is to continue receiving
22     government funds under specifically enumerated
23     grant programs, it must cease promoting and
24     providing nontherapeutic abortions or

Page 19

STANLEY K. HENSHAW, Ph.D.

1  affiliating with anyone else who does so."
2  Am I correct in understanding that the
3  purpose of paragraph 2 is to explain your
4  understanding of the law that's being
5  challenged in this case?
6  A   That is correct.
7  Q   And what do you base that understanding of the
8      law on?
9  A   That is what I was told by the attorneys.
10 Q   And for the record, I believe you mentioned
11     earlier that those were the attorneys for PPFA
12     who gave you that distribution of the law that
13     is being challenged here; correct?
14 A   I thought their client was actually the
15     Planned Parenthoods in Ohio.
16 Q   Thank you for clarifying.  So earlier we were
17     talking about attorneys for PPFA who contacted
18     you to ask you to be an expert in this case;
19     is that correct?
20 A   That is correct.
21 Q   Then at some point in time, did you begin
22     working specifically for counsel for Planned
23     Parenthood of Greater Ohio and Planned
24     Parenthood of Southwest Ohio?

Page 20

STANLEY K. HENSHAW, Ph.D.

1  A   That is correct.  As I recall, I had little
2      further contact with the attorneys for PPFA.
3  Q   And did the attorneys for -- if we -- let me
4      step back for a movement to shorten things a
5      little bit today.  If I refer to Planned
6      Parenthood of Greater Ohio as PPGOH, do we
7      both understand we're referring to that
8      organization?
9  A   That would be fine.
10 Q   And also, for Planned Parenthood of Southwest
11     Ohio, can we refer to that as PPSWO for
12     purposes of today's deposition?
13 A   I'm sorry.  PP what?
14 Q   PPSWO.
15 A   PP what?
16     MS. PARKER:  SWO.  PPSWO.
17     THE WITNESS:  Thank you.  I had not heard
18     it pronounced that way before.
19     MS. PARKER:  That's what we have been
20     calling it, PPSWO.
21     THE WITNESS:  Okay.
22     BY MS. RICHARDSON:
23 Q   And so, did counsel for either PPGOH or PPSWO
24     add or change anything about your assignment

Page 21

STANLEY K. HENSHAW, Ph.D.

1  in this case?
2  A   I'm not sure I understand the question.
3  Q   Sure.
4  A   My --
5  Q   So go ahead.
6  A   My assignment was to discuss with them what
7      kind of statement I could make and work on
8      creating the expert report.
9  Q   And was that the same assignment as you had
10     understood it when you spoke originally to the
11     PPFA attorneys?
12 A   Yes.
13 Q   And did counsel for PPSWO or PPGOH provide any
14     other information about the law that's being
15     challenged in this case apart from what is
16     being described in paragraph 2?
17 A   Not that I can think of, no.
18 Q   And you haven't done any specific analysis of
19     the impact of the law that's being challenged
20     here Section 3701.034; is that correct?
21 A   Well, again, I don't think I understand the
22     question.  My report estimates what -- there
23     would be an impact, what the impact would be
24     for women who have to travel additional

Page 22

1  STANLEY K. HENSHAW, Ph.D.
2  distances. And I believe that applies to
3  Ohio.
4  Q  And so, to follow up on what you just said,
5     essentially is it fair to kind of summarize,
6     your report essentially estimates the impact
7     if the two plaintiffs in this case were to
8     stop providing abortion services; is that
9     correct?
10 A  That is correct.
11 Q  And you don't know whether the law that's
12    being challenged in this case would actually
13    cause either of these organizations to stop
14    providing abortion services, do you?
15 A  I don't know what decision the organizations
16    would make if this law goes into effect.
17 Q  And I'd like to ask you now about paragraph 3.
18    You state there, "I understand that plaintiffs
19    Planned Parenthood of Greater Ohio and Planned
20    Parenthood Southwest Ohio Region cannot
21    continue to provide these non-abortion health
22    and education services without the government
23    funds they have theretofore received, or in
24    some cases would be required to charge
25    patients for some of those services." Did I

Page 23

1  STANLEY K. HENSHAW, Ph.D.
2  read that correctly?
3  A  Yes.
4  Q  What do you base that understanding on?
5  A  That information was provided by the
6     attorneys, so --
7  Q  Have you done any independent research with
8     respect to what's described here in paragraph
9     3?
10 A  No.
11 Q  And the last sentence in paragraph 3,
12    "Accordingly, if the act goes into effect
13    PPGOH and PPSWO will be forced either to
14    curtail many of the services that they
15    previously provided under these programs, or
16    to stop providing nontherapeutic abortions
17    entirely at their health centers."
18       What do you base that statement on?
19 A  Well, first, what the attorneys have told me,
20    and second, what they have told me about the
21    statute in question. From what they told me,
22    that's a clear interpretation of the statute.
23 Q  And again, you have not independently reviewed
24    or interpreted the statute that's being
25    challenged in this case; correct?

Page 24

1  STANLEY K. HENSHAW, Ph.D.
2  A  Correct.
3  Q  And then, I'd like to ask you, sort of
4     generally, paragraphs 4, 5, 6, 7, and 8
5     describe your understanding of various
6     distances and the abortion clinics in Ohio and
7     surrounding states; is that correct?
8  A  That is correct.
9  Q  What do you base the understandings reflected
10    in those paragraphs on?
11 A  Primarily on the attorneys's statement.
12    I'm --
13 Q  Anything -- I'm sorry. Go ahead.
14 A  I'm from Ohio. I have looked at a map. I
15    understand the distances. I know the
16    distances here. I have either checked them or
17    I know that they are approximately correct.
18    And there was nothing in these statements that
19    led me to question their accuracy.
20 Q  And when you refer to distances that you're
21    familiar with, are you referring to the
22    distances between respective cities within
23    Ohio?
24 A  Yes.
25 Q  And so, statements about the number of

Page 25

1  STANLEY K. HENSHAW, Ph.D.
2  abortions provided by PPGOH and PPSWO and
3  other statements about abortion services in
4  Ohio, those came directly from plaintiffs's
5  counsel; correct?
6  A  That is correct.
7  Q  Was there anything else that you reviewed or
8     studied in connection with paragraphs -- I
9     believe we said 4 through 8?
10 A  The only other thing I did was check the
11    distance from Columbus to Pittsburgh to see if
12    that would be a closer facility, but it isn't,
13    so -- otherwise, I did not investigate any of
14    those statements.
15 Q  So otherwise, the representations contained in
16    these paragraphs came directly from
17    plaintiffs's counsel; correct?
18 A  Correct.
19 Q  And then, I'd like to direct your attention
20    now to paragraph 10.
21 A  Yes.
22 Q  And you refer at the beginning of that
23    paragraph to the "relevant demographic and
24    epidemiological literature." And then you go
25    on to describe what you believe that

7 (Pages 22 to 25)

Page 26

STANLEY K. HENSHAW, Ph.D.

literature states, is that a fair summary?

A Yes.

Q What do you -- what do you include -- sorry. What do you consider to be relevant demographic and epidemiological literature for purposes of this report?

A The literature that tries to study the association between abortion rates and the availability of abortion services. And specifically in this case, the effect of distance on abortion rates.

Q Thank you. And does any of that literature focus specifically on the State of Ohio to your knowledge?

A No.

Q Same question with respect to your statement a little bit later in the paragraph, at the top of Page 5. You begin with, "Based on my review of the relevant research," what do you include as relevant research?

A Well, I have cited the most relevant studies that I think are of high quality, but there are other similar studies that look at the relation of abortion availability to abortion

Page 27

STANLEY K. HENSHAW, Ph.D.

rates, so -- and I'm familiar with quite a few studies that have looked at that relationship.

Q And to your knowledge, do any of those studies focus specifically on the State of Ohio?

A No.

Q And in the next several paragraphs, you describe some research related to legislation in, I believe, Texas, Georgia, Washington. Any other states that you focus on in these next several paragraphs?

A No, those are the states.

Q And then, I'd like to direct your attention to paragraph 17, please.

A Yes.

Q And in paragraph 17, you state, "Considering the results of these studies, I estimate that in general an additional travel burden of 100 miles will cause 20 to 25 percent of women who would have otherwise obtained abortions not to obtain them."
Did I read that correctly?

A Yes.

Q And how did you arrive at that calculation or that estimate?

Page 28

STANLEY K. HENSHAW, Ph.D.

A Based on the studies already cited, the study that had the most specific numbers was the study in Georgia, which found that about 24 to 25 percent of women did not have abortions when they had to travel an extra approximately 100 miles. The other studies confirmed those numbers.
The study -- the first study in Texas cited found a 69 percent decline in the number of women who were able to access services when the distance increased to about 250 miles from about 25 or 30 miles, as I recall. Obviously, 100 miles would not have the same impact as 250 miles, so I wouldn't think the effect of 100 miles would be close to 69 percent.
The other study in Texas found that if you doubled the distance from an abortion service, the abortion rate declines by 20 to 29 percent depending on the women's race and ethnicity. In that case, say the distance went from 50 miles to 100 miles, then there would be, according to that study, a decline of about 20 to 29 percent in the number of women who were able to obtain abortions.

Page 29

STANLEY K. HENSHAW, Ph.D.

And the study in Washington also confirms, with a slightly different number. And that study, that was a study that compared rural counties to urban counties, and found that over a ten-year period the number of providers in rural area declined while the number of providers in urban area stayed the same.
And over that period, the abortion rate in the rural areas declined by 10 percent more than the abortion rate in the urban areas. The additional distance women had to travel or did travel from the rural areas was about 12 miles. So in that case, you could say 12 miles made a difference of 10 percent.
I think putting these together, it's reasonable to estimate that 100 miles would have an effect of 20 to 25 percent.

Q And so, just so I understand essentially then what you're doing is assuming that the numbers that applied in the studies in Texas, Georgia and Washington would apply in the same way in the State of Ohio, and basing your calculation on that presumption; is that fair?

A They would apply in approximately in the same

Page 30

STANLEY K. HENSHAW, Ph.D.

1
2  way.
3  Q  And you haven't done any kind of study to
4     determine whether they would in fact apply in
5     approximately the same way in Ohio; correct?
6  A  That is correct.
7  Q  And you haven't done any type of analysis of
8     ways that the State of Ohio might differ in
9     material respects from the states of Georgia,
10    Washington and Texas; correct?
11 A  Well, just common knowledge. I mean, I'm
12    pretty familiar with the state and with the
13    country. So then I know there are interstate
14    highways in every state. In my experience,
15    states don't differ a huge amount in terms of
16    transportation or factors that would affect
17    whether distance had a big effect or not.
18 Q  And so, again, this calculation is based on
19    three states; correct?
20 A  Correct.
21 Q  Texas, Georgia, Washington? I'm sorry. Is
22    that correct?
23 A  I think I know what you said. You broke up a
24    little built.
25 Q  Oh, I'm sorry. I'm happy to rephrase.

Page 31

STANLEY K. HENSHAW, Ph.D.

1
2     Your estimate in paragraph 17 is based on
3     your review of studies conducted in three
4     states, Texas, Georgia and Washington;
5     correct?
6  A  Correct.
7  Q  And you have not done an analysis specifically
8     of whether any of those three states is
9     representative of any other state or the
10    United States as a whole; correct?
11 A  I don't know what you mean by
12    "representative." I haven't done any special
13    investigations for this purpose, for this
14    report. But of course, I think anyone knows
15    quite a bit about the country and the
16    similarities and differences between states.
17 Q  And so, certainly then based on common sense,
18    a state like Texas might differ in many
19    respects from a state like New York; correct?
20 A  It would be the same in many respects and
21    different in many respects. That's a general
22    statement.
23 Q  Right, exactly. So if we wanted to understand
24    whether the specific calculations that were
25    made as a result of the studies in Washington,

Page 32

STANLEY K. HENSHAW, Ph.D.

1
2     Texas, and Georgia could be extrapolated and
3     applied to other states, we would need to do
4     some type of analysis of whether those states
5     were representative in relevant material
6     respects, is that fair?
7  A  No, I don't agree with that.
8  Q  Why not?
9  A  States are similar enough. Washington and
10    Texas and Georgia represent a pretty cross --
11    good cross-section of states in the country.
12    The results are roughly similar in those three
13    areas. There's nothing about Ohio that's
14    different in any relevant respect from those
15    other states that I know of.
16 Q  But you haven't done that study; is that fair?
17    MS. PARKER: Asked and answered.
18    Objection.
19 A  I don't know what study you need exactly.
20    It's not clear what study one would do.
21    BY MS. RICHARDSON:
22 Q  Have you conducted any type of analysis of the
23    number of areas in Ohio that would be
24    considered to be rural?
25 A  No.

Page 33

STANLEY K. HENSHAW, Ph.D.

1
2  Q  Have you done any type of study of the number
3     of areas in Ohio that would be classified as
4     urban?
5  A  No.
6  Q  Have you done a specific analysis of any of
7     the demographic information related to Ohio?
8  A  No.
9  Q  So you don't know how any of these factors
10    would compare or contrast to Texas, Washington
11    or Georgia; is that fair?
12 A  No.
13 Q  Why not?
14 A  Because it's general knowledge the
15    demographics of these various states are
16    basically similar in many respects.
17    The studies I quoted -- actually, if you
18    are concerned about race and ethnicity, the
19    studies, two or three of them, looked
20    specifically at race and ethnicity, and found
21    that the effects were characteristic of white
22    women, non-Hispanic white women, Hispanic
23    women, and black women.
24    If Ohio differs in the racial
25    distribution, that does not affect my

9 (Pages 30 to 33)

TSG Reporting - Worldwide - 877-702-9580

Page 34

STANLEY K. HENSHAW, Ph.D.

conclusions because we know that the distance has an effect on all racial groups and ethnicity. And Hispanics are actually more affected than whites and blacks.

So if Ohio has a higher or lower proportion of white women or black women or urban women, we know that from the other studies there is effect in urban areas as well as rural areas. So it wouldn't matter to my conclusions if it turned out Ohio is more urban or less urban than these other states. Then actually, it's probably not too different from the other states in those respects.

Q And you have indicated even in this expert report that income certainly has an impact; correct?

A Yes.

Q Have you done any type of study of the economic status or income of women in Ohio?

A The attorneys informed me that the patients served in Cincinnati, the Planned Parenthood in Cincinnati were predominantly of low income. That's all I know specifically about Ohio.

Page 35

STANLEY K. HENSHAW, Ph.D.

Q So you didn't do any independent research or analysis to determine what percentage of women in any city in Ohio would be low income; is that fair?

A That's fair.

Q And you don't know how those numbers would specifically compare to the percentage of women who would qualify as low income in Georgia, Texas or Washington; is that fair?

A I haven't specifically investigated that.

Q And so, apart from -- I think you described it as common knowledge -- what you would consider to be common knowledge about Ohio as it compares to Washington, Georgia and Texas, you have no other basis for making comparisons between those states; correct?

A Well, I have my experience doing demographic studies, so I probably know more about the demographics of the various states than most people do, but I didn't do any specific investigation for this report.

Q And your previous demographics studies did not focus specifically on Ohio; correct?

A That is correct.

Page 36

STANLEY K. HENSHAW, Ph.D.

Q I'd like to direct your attention to paragraph 21 of the report. Just let me know when you're ready.

A Yes.

Q In paragraph 21, you describe a study in North Carolina that analyzed the effect of a statute that took away funding that had previously been provided for abortion services in that state; is that fair?

A That's fair.

Q Do you know whether the law that's being challenged in this case reduces or impacts the funding provided specifically for abortion services?

A As far as I know, it would not affect public funding for abortion services.

Q You mentioned that you had done expert work in the past. What changes did you make in this case to the expert report that was submitted -- let me strike that.

Is the expert report that you submitted in this case substantively the same as the expert reports you have submitted in prior cases?

A Yes, with the addition of -- I think we

Page 37

STANLEY K. HENSHAW, Ph.D.

referred to a study in Texas that was not available at the time of the earlier reports.

Q Aside from adding a reference to the study in Texas, did you make any other changes to your analysis or study in connection with the report that you submitted in this case?

A I went over -- I went over it and made some wording changes, minor wording changes. I can't tell you exactly what, but there were some changes from the earlier reports. Also, I think this report has a little less detail than some of the earlier reports that were done. And that was the decision of the attorneys.

Q Are the conclusions that you reached in this case the same as the conclusions that you reached in the prior cases in which you submitted similar reports?

A Yes, except as they apply to Ohio specifically. Otherwise, the conclusions were the same.

Q And so, when you say they apply to Ohio specifically, you changed the plaintiffs to PPGOH and PPSWO; correct?

10 (Pages 34 to 37)

Page 38

STANLEY K. HENSHAW, Ph.D.
2  A  Yes. There were other changes.
3  Q  What other changes?
4  A  Well, there are references to distances
5     between cities in Ohio, where women would have
6     to go if the Planned Parenthoods in Ohio
7     stopped providing abortion services.
8  Q  And you're referring to the representations we
9     discussed earlier that were given to you from
10    plaintiffs's counsel; correct?
11 A  Correct.
12 Q  And so, aside from adding in the
13    representations that counsel provided to you
14    and changing the names to the plaintiffs in
15    this case, were there any other changes that
16    you made to the expert report that you
17    submitted in this case?
18       MS. PARKER: Mischaracterizes prior
19    testimony. Objection.
20 A  As I said, we added a reference and we have
21    made some other minor -- other changes in the
22    report. I couldn't specify exactly what.
23       BY MS. RICHARDSON:
24 Q  And the minor changes, I believe, you said
25    those would be sort of stylistic changes,

Page 39

STANLEY K. HENSHAW, Ph.D.
2     would that be fair?
3  A  I think so.
4  Q  Were there any other substantive changes in
5     your analysis in the expert report?
6        MS. PARKER: Objection. Asked and
7     answered.
8  A  Would you like me too answer it?
9        BY MS. RICHARDSON:
10 Q  Yes, please go ahead and answer.
11 A  No. No substantive changes to any
12    conclusions. I would draw any of the general
13    conclusions.
14       THE WITNESS: This says your Internet
15    connection is unstable.
16       MS. PARKER: Yeah, I know. But I think
17    it's okay. If we're freezing up, let us know.
18    Uh-oh. Did we freeze up?
19    (BRIEF DISCUSSION OFF THE RECORD)
20       BY MS. RICHARDSON:
21 Q  Dr. Henshaw, in paragraph 34, you summarize
22    your conclusions and you state in summary, "It
23    is my opinion that the elimination of abortion
24    services in PPGOH's and PPSWO's health centers
25    would prevent a substantial proportion of

Page 40

STANLEY K. HENSHAW, Ph.D.
2     women who would have obtained an abortion at
3     those health centers from being able to obtain
4     abortions, and would cause many of the women
5     ultimately able to access an abortion provider
6     to experience unwanted delay."
7        Did I read that correctly?
8  A  That is correct.
9  Q  And this conclusion is based on the assumption
10    that PPGOH and PPSWO would stop providing
11    abortion services; correct?
12 A  Correct.
13 Q  And obviously, if they continue to provide
14    abortion services in the same manner that they
15    do now, the various impacts that you have
16    described would not occur; correct?
17 A  That is correct.
18       MS. RICHARDSON: If we could take just a
19    two-minute break, I think I actually may be
20    finished.
21       MS. PARKER: Okay. Can we take a little
22    longer than two minutes to make sure that we
23    are okay on this end, too?
24       MS. RICHARDSON: Absolutely.
25       (RECESS, 10:19-10:46 A.M.)

Page 41

STANLEY K. HENSHAW, Ph.D.
2        MS. RICHARDSON: Dr. Henshaw, I have no
3     further questions at this time, depending on
4     whether your counsel has any questions. Thank
5     you very much. I appreciate your time today.
6        THE WITNESS: Well, thank you.
7  CROSS-EXAMINATION BY MS. PARKER:
8  Q  I just have a couple of questions.
9        Dr. Henshaw, as an expert in reproductive
10    epidemiology, why do you think it is
11    appropriate to rely on studies from the three
12    states, Texas, Washington and Georgia, to draw
13    conclusions about Ohio?
14 A  The basic issues we're looking at, which is
15    distance and cost, affects everyone. It's not
16    going to be different for women in Washington
17    State or not that different for women in Ohio,
18    because money matters to all of them. It's
19    going to be a barrier. So in many ways, all
20    parts of the country are fairly similar.
21 Q  Do you believe that the availability of
22    different forms of transportation in Ohio as
23    compared to the three states you -- in the
24    studies affects your opinion?
25 A  I don't think the availability of

11 (Pages 38 to 41)

Page 42

STANLEY K. HENSHAW, Ph.D.

transportation is that different from one part of the country to another part of the country enough anyway to affect this at all. I mean, as I say, any estimates are not exactly accurate. You can't say, even from one year to the next, that you would have exactly the same effect of distance.

But in general, you can tell that there's a large effect, whether it's 20 percent or 25 percent or -- there's going to be variability depending on local conditions and chance. But overall, there will be a substantial effect in my opinion anywhere in the country.

Q  A substantial effect of what?
A  Of distance on abortion rates, on the ability of women to terminate unwanted pregnancies.
Q  Thank you. In the field of reproductive epidemiology, what is the typical practice in terms of relying on studies from a sample of states or a group of states to draw conclusions about other states?
A  I would say that that is general practice. In my cases, you would have studies in a particular area that you then apply to other

Page 43

STANLEY K. HENSHAW, Ph.D.

areas.

Q  You said previously that you have submitted expert testimony in Alabama and Wisconsin; is that correct?
A  That is correct.
Q  And did you conduct specific studies in those states in which you were accepted as an expert?
A  No.

MS. PARKER: Thank you. I don't have anything further.

MS. RICHARDSON: No further questions.

(WITNESS EXCUSED)

(WHEREUPON, THE DEPOSITION WAS CONCLUDED AT 10:50 A.M.)

Page 44

STANLEY K. HENSHAW, Ph.D.
STATE OF NORTH CAROLINA
COUNTY OF WAKE
CERTIFICATE

I, Sarah A. Bowers, a Notary Public in and for the State of North Carolina duly commissioned and authorized to administer oaths and to take and certify depositions, do hereby certify that on July 13, 2016, Stanley K. Henshaw, Ph.D., being by me personally duly sworn to tell the truth, thereupon testified as above set forth as found in the preceding pages, this examination being reported by me verbatim and then reduced to typewritten form under my direct supervision; that the foregoing is a true and correct transcript of said proceedings to the best of my ability and understanding; that I am not related to any of the parties to this action; that I am not interested in the outcome of this case; that I am not of counsel nor in the employ of any of the parties to this action.

IN WITNESS WHEREOF, I have hereto set my hand, this the 19th day of July, 2016.

_____
Sarah A. Bowers
Notary Public #

Page 45

STANLEY K. HENSHAW, Ph.D.
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PLANNED PARENTHOOD OF     ) Case No. 1:16-cv-539
GREATER OHIO, et al.,     )
                          ) Judge
      Plaintiffs,         ) Michael R. Barrett
                          )
vs.                       )
                          )
RICHARD HODGES, et al.,   )
                          )
      Defendants.         )

DEPOSITION OF STANLEY K. HENSHAW, Ph.D.
CERTIFICATE OF DEPONENT

I, Stanley K. Henshaw, Ph.D., hereby certify that I was first duly sworn prior to the commencement of my deposition, which was given before Sarah A. Bowers, on July 13, 2016, in Raleigh, North Carolina, and that review, examination and signing of the deposition was reserved.

The foregoing constitutes a true and accurate transcript of said deposition, and (CIRCLE ONE):
  (a) no changes are necessary, OR
  (b) I desire that the changes attached hereto on the errata sheet be incorporated into said deposition.

_____
STANLEY K. HENSHAW, Ph.D.

Witness, my hand and seal, on this, the _____ day of _____, 2016,
_____

```
                                              Page 46
 1     NAME OF CASE:
 2     DATE OF DEPOSITION:
 3     NAME OF WITNESS:
 4     Reason Codes:
 5         1. To clarify the record.
 6         2. To conform to the facts.
 7         3. To correct transcription errors.
 8     Page _____ Line _____ Reason _____
 9     From _____ to _____
10     Page _____ Line _____ Reason _____
11     From _____ to _____
12     Page _____ Line _____ Reason _____
13     From _____ to _____
14     Page _____ Line _____ Reason _____
15     From _____ to _____
16     Page _____ Line _____ Reason _____
17     From _____ to _____
18     Page _____ Line _____ Reason _____
19     From _____ to _____
20     Page _____ Line _____ Reason _____
21     From _____ to _____
22     Page _____ Line _____ Reason _____
23     From _____ to _____
24
                    _____
25
```

**A**
**a.m** 1:17 40:25 43:15
**ability** 42:16 44:16
**able** 6:7 28:11,25 40:3,5
**abortion** 8:13 13:7 14:3,5 15:7,8,9,14 16:7,10,13,16,23 17:3,12,18 22:8 22:14 24:6 25:3 26:9,10,12,25,25 28:18,19 29:9,11 36:9,14,17 38:7 39:23 40:2,5,11 40:14 42:16
**abortions** 13:4 15:17 18:14,25 23:16 25:2 27:20 28:5,25 40:4
**Absolutely** 40:24
**accepted** 43:8
**access** 28:11 40:5
**accuracy** 24:19
**accurate** 8:24 42:6 45:18
**act** 18:21 23:12
**action** 44:18,21
**activity** 15:10
**actual** 10:20
**add** 20:25
**added** 38:20
**adding** 37:4 38:12
**addition** 36:25
**additional** 21:25 27:18 29:12
**administer** 44:7
**affect** 30:16 33:25 36:16 42:4
**affiliating** 19:2
**ago** 4:14
**agree** 32:7
**agreed** 1:13 12:22
**ahead** 11:14 21:6 24:13 39:10
**Akron** 18:2
**al** 1:4,7 45:5,9
**Alabama** 12:14

43:4
**America** 11:23 12:2,17
**amount** 30:15
**analyses** 12:17 14:12 16:3
**analysis** 14:10 21:19 30:7 31:7 32:4,22 33:6 35:3 37:6 39:5
**analyzed** 36:7
**answer** 5:3,13,17 6:7 16:12 39:8,10
**answered** 5:10,24 32:17 39:7
**answers** 5:2
**Anya** 2:14
**anyway** 42:4
**apart** 21:16 35:12
**apologize** 16:11
**APPEARANCE** 2:2
**applicant** 9:9
**applied** 29:21 32:3
**applies** 22:2
**apply** 29:22,25 30:4 37:20,23 42:25
**appreciate** 10:11 41:5
**appropriate** 41:11
**approve** 8:19,20
**approved** 8:21
**approximately** 24:17 28:6 29:25 30:5
**area** 14:6 18:2 29:7 29:8 42:25
**areas** 15:8 29:10,11 29:13 32:13,23 33:3 34:9,10 43:2
**arrive** 27:24
**aside** 37:4 38:12
**asked** 5:15,17 12:7 12:9 32:17 39:6
**asking** 4:24
**assignment** 20:25 21:7,10

**assist** 9:13 10:6
**associated** 15:20
**association** 26:9
**assume** 5:18 7:7
**assuming** 29:20
**assumption** 40:9
**attached** 6:23 45:19
**attention** 7:2 25:19 27:13 36:2
**attorney** 2:10 4:16 4:16
**attorneys** 11:13,16 11:22 16:24 17:2 19:10,12,18 20:3 20:4 21:12 23:6 23:19 34:21 37:15
**attorneys's** 24:11
**audibly** 5:3
**authorized** 44:7
**availability** 26:10 26:25 41:21,25
**available** 16:8,25 17:6 37:3
**Avenue** 1:15 2:6

**B**
**b** 45:19
**back** 20:5
**background** 6:13
**ballpark** 10:18
**Barrett** 1:4 45:6
**barrier** 41:19
**base** 19:8 23:4,18 24:9
**based** 18:9 26:19 28:2 30:18 31:2 31:17 40:9
**basic** 4:23 41:14
**basically** 33:16
**basing** 29:23
**basis** 35:16
**bearing** 10:10
**becoming** 11:11
**beginning** 25:22
**behalf** 1:12 2:4,9
**behavior** 7:20
**believe** 16:2 17:21

18:8 19:11 22:2 25:9,25 27:9 38:24 41:21
**best** 44:16
**big** 30:17
**bit** 5:8 6:13 7:22 15:2 20:6 26:18 31:15
**black** 33:23 34:7
**blacks** 34:5
**Bowers** 1:14,23 44:5,24 45:15
**Brandon** 2:14
**break** 5:22 6:2 40:19
**BRIEF** 39:19
**Broad** 2:11
**broke** 30:23
**built** 30:24
**burden** 27:18

**C**
**calculation** 27:24 29:23 30:18
**calculations** 31:24
**California** 8:5 9:23
**calling** 20:21
**careful** 5:9,12
**Carolina** 1:16 36:7 44:2,6 45:16
**case** 1:3 4:17 6:21 9:9 10:13,15,25 11:12,18 12:5,8 12:23,24,25 13:10 13:14 17:24 18:7 19:6,19 21:2,16 22:7,12 23:25 26:11 28:21 29:14 36:13,20,23 37:7 37:17 38:15,17 44:19 45:5 46:1
**cases** 12:14 13:20 13:24 14:9 22:24 36:24 37:18 42:24
**catch** 16:11
**cause** 22:13 27:19 40:4
**cease** 18:24

**centers** 23:17 39:24 40:3
**certainly** 31:17 34:16
**CERTIFICATE** 44:4 45:12
**certify** 44:8,8 45:14
**challenged** 13:10 13:14 19:6,14 21:16,20 22:12 23:25 36:13
**chance** 42:12
**change** 20:25
**changed** 37:24
**changes** 7:12 36:19 37:5,9,9,11 38:2,3 38:15,21,24,25 39:4,11 45:19,19
**changing** 38:14
**characteristic** 33:21
**characteristics** 15:20
**charge** 22:24
**check** 16:6 25:10
**checked** 16:9,15 24:16
**choice** 13:6
**Cincinnati** 16:6,18 17:22 34:22,23
**CIRCLE** 45:18
**cited** 26:22 28:2,10
**cities** 16:7,13,16,19 16:20 17:5,17,21 17:23 18:15 24:22 38:5
**city** 35:4
**clarify** 46:5
**clarifying** 19:17
**classified** 33:3
**clear** 23:22 32:20
**Cleveland** 18:2
**client** 19:15
**clinics** 24:6
**close** 28:16
**closer** 25:12
**Codes** 46:4
**Columbus** 2:11

16:7,18 17:7,22
25:11
**commencement**
45:15
**commencing** 1:17
**commissioned** 44:6
**common** 30:11
31:17 35:13,14
**compare** 13:18
33:10 35:8
**compared** 29:4
41:23
**compares** 35:15
**comparing** 15:11
**comparisons** 35:16
**completely** 6:7
**comprehensive**
17:17
**concerned** 33:18
**concerning** 7:19
**CONCLUDED**
43:15
**conclusion** 40:9
**conclusions** 34:2
34:11 37:16,17,21
39:12,13,22 41:13
42:22
**conditions** 42:12
**conduct** 43:7
**conducted** 31:3
32:22
**conference** 2:15,16
**confirm** 18:9
**confirmed** 16:24
28:7
**confirms** 29:2
**conform** 46:6
**confused** 9:25
**connection** 10:13
10:15 12:8 18:6
25:8 37:6 39:15
**consider** 26:5
35:13
**considered** 32:24
**Considering** 27:16
**consists** 15:3
**constitutes** 45:17
**consult** 10:3 14:22

**consultant** 7:17
**contact** 20:3
**contacted** 11:11,21
12:4 19:18
**contained** 25:15
**CONTENTS** 3:2
**continue** 18:22
22:21 40:13
**contraception** 8:12
**contrast** 13:18
33:10
**control** 7:19
**copy** 6:20,24 7:4,5
**corner** 7:6
**correct** 6:18,19
10:7,8 12:6 14:24
14:25 16:4,5 17:4
17:20 18:7,8,16
19:3,7,14,20,21
20:2 21:21 22:9
22:10 23:25 24:2
24:7,8,17 25:5,6
25:17,18 30:5,6
30:10,19,20,22
31:5,6,10,19
34:17 35:17,24,25
37:25 38:10,11
40:8,11,12,16,17
43:5,6 44:15 46:7
**correctly** 7:20
16:17 23:2 27:22
40:7
**cost** 41:15
**counsel** 2:2 12:4,20
17:15,23 18:6,13
19:23 20:24 21:14
25:5,17 38:10,13
41:4 44:19
**counties** 29:5,5
**countries** 15:12
**country** 30:13
31:15 32:11 41:20
42:3,3,14
**COUNTY** 44:3
**couple** 41:8
**course** 31:14
**court** 1:1 4:24 45:1
**creating** 9:3,5 21:9

**cross** 3:6 32:10
**CROSS-EXAMI...**
41:7
**cross-section** 32:11
**current** 7:4,5,16,23
**currently** 7:17,25
**curtail** 23:14
**cut** 13:2
**CV** 6:24 7:3,4,13

————— **D** —————
**date** 7:7 10:21 46:2
**dated** 10:21
**dates** 10:16
**day** 44:23 45:24
**Dayton** 17:25
**DC** 2:6
**decision** 9:17 22:15
37:14
**decline** 28:10,23
**declined** 29:7,10
**declines** 28:19
**defendant** 4:18
**Defendants** 1:8,12
2:9 45:10
**delay** 5:9 40:6
**demographic** 25:23
26:6 33:7 35:18
**demographics**
33:15 35:20,23
**Department** 4:19
**depending** 28:20
41:3 42:12
**DEPONENT** 45:12
**deposed** 4:21
**deposition** 1:11
20:13 43:15 45:11
45:15,16,18,20
46:2
**depositions** 44:8
**describe** 7:22 15:5
24:5 25:25 27:8
36:6
**described** 13:23
15:23 21:17 23:8
35:12 40:16
**describing** 15:19
**Description** 3:8

**desire** 45:19
**detail** 6:14 37:12
**determine** 9:12
16:20 17:11 30:4
35:3
**differ** 30:8,15
31:18
**difference** 29:15
**differences** 14:11
15:7 31:16
**different** 12:21
13:23 15:8 29:3
31:21 32:14 34:13
41:16,17,22 42:2
**differs** 33:24
**direct** 3:5 7:2 14:18
25:19 27:13 36:2
44:14
**directly** 25:4,16
**discuss** 21:7
**discussed** 38:9
**DISCUSSION**
39:19
**distance** 25:11
26:12 28:12,18,21
29:12 30:17 34:2
41:15 42:8,16
**distances** 16:6,9,15
16:18 22:2 24:6
24:15,16,20,22
38:4
**distribution** 19:13
33:25
**DISTRICT** 1:1,1
45:1,3
**DIVISION** 1:2
45:3
**doing** 29:20 35:18
**doubled** 28:18
**Dr** 4:12,20 39:21
41:2,9
**draw** 39:12 41:12
42:21
**duly** 4:5 44:6,10
45:14

————— **E** —————
**earlier** 10:17 19:12

19:17 37:3,11,13
38:9
**easiest** 15:5
**East** 2:11
**economic** 34:20
**edits** 9:14
**education** 22:22
**effect** 22:16 23:12
26:11 28:15 29:18
30:17 34:3,9 36:7
42:8,10,13,15
**effects** 33:21
**either** 20:24 22:13
23:13 24:16
**elimination** 39:23
**employ** 44:20
**entirely** 23:17
**entity** 18:22
**enumerated** 18:23
**epidemiological**
25:24 26:6
**epidemiology**
14:24 15:3 41:10
42:19
**errata** 45:20
**errors** 46:7
**Esq** 2:5,10,14
**essentially** 8:22
22:5,6 29:19
**estimate** 10:19
27:17,25 29:17
31:2
**estimates** 21:23
22:6 42:5
**et** 1:4,7 45:5,9
**ethnicity** 28:20
33:18,20 34:4
**exactly** 31:23 32:19
37:10 38:22 42:5
42:7
**examination** 3:5
4:11 44:12 45:16
**examined** 4:6
**EXCUSED** 43:14
**Exhibit** 3:9 4:9
6:17 14:20
**EXHIBITS** 3:7
**expect** 5:21

**expected** 12:11
**experience** 16:23
 30:14 35:18 40:6
**expert** 3:9 6:20,23
 10:14 12:5,9
 13:21,24 14:13,16
 18:18 19:19 21:9
 34:15 36:18,20,22
 36:23 38:16 39:5
 41:9 43:4,9
**explain** 19:4
**explained** 12:25
**extensive** 6:14
**extra** 28:6
**extrapolated** 32:2

**F**

**face** 5:4 13:22
**facilities** 16:10,16
 16:19,21 17:3,7,8
 17:11,16,18,25
 18:5,14
**facility** 17:25 25:12
**fact** 30:4
**factors** 15:13 30:16
 33:9
**facts** 46:6
**fair** 5:19 13:16 22:5
 26:2 29:24 32:6
 32:16 33:11 35:5
 35:6,10 36:10,11
 39:2
**fairly** 41:20
**familiar** 24:21 27:2
 30:12
**Family** 8:3 9:24
**far** 36:16
**February** 11:3
**Federation** 11:23
 12:2,16
**feel** 10:18
**fertility** 7:19
**field** 42:18
**final** 9:17
**financial** 13:7
**fine** 5:20 6:3 20:10
**finish** 5:12
**finished** 40:20

**first** 4:5 10:20
 14:18 23:19 28:9
 45:14
**focus** 7:24 26:14
 27:5,10 35:24
**focused** 15:24
**follow** 22:4
**follows** 4:7
**forced** 23:13
**foregoing** 44:15
 45:17
**form** 44:14
**forms** 41:22
**forth** 44:11
**found** 28:4,10,17
 29:5 33:20 44:11
**Francisco** 8:5 9:23
**free** 10:18
**freeze** 39:18
**freezing** 39:17
**front** 6:16 7:3
**fund** 8:23 9:18
**funded** 8:20
**funding** 9:13,19
 10:4,6 36:8,14,17
**funds** 18:23 22:23
**further** 20:3 41:3
 43:12,13

**G**

**Gates** 1:14
**general** 10:19
 27:18 31:21 33:14
 39:12 42:9,23
**General's** 2:10
 4:17
**generally** 14:20
 24:4
**Georgia** 27:9 28:4
 29:21 30:9,21
 31:4 32:2,10
 33:11 35:10,15
 41:12
**gestures** 5:4
**give** 5:13 10:18
**given** 38:9 45:15
**gives** 14:2
**giving** 13:6,7 14:3

 14:3
**go** 6:14 11:14 21:6
 24:13 25:24 38:6
 39:10
**goes** 22:16 23:12
**going** 5:6 14:16,17
 41:16,19 42:11
**good** 4:12,13 9:7
 10:16 32:11
**government** 18:23
 22:22
**grant** 8:23 18:24
**Greater** 1:4 11:19
 19:24 20:7 22:19
 45:5
**ground** 4:23
**group** 42:21
**groups** 34:3

**H**

**hand** 44:23 45:23
**happy** 5:16 30:25
**health** 4:19 22:21
 23:17 39:24 40:3
**heard** 20:18
**help** 9:2 14:21 15:2
**Henshaw** 1:11 2:1
 3:1,4 4:1,4,9,12
 4:20 5:1 6:1,17
 7:1 8:1 9:1 10:1
 11:1 12:1 13:1
 14:1 15:1 16:1
 17:1 18:1 19:1
 20:1 21:1 22:1
 23:1 24:1 25:1
 26:1 27:1 28:1
 29:1 30:1 31:1
 32:1 33:1 34:1
 35:1 36:1 37:1
 38:1 39:1,21 40:1
 41:1,2,9 42:1 43:1
 44:1,9 45:1,11,14
 45:22
**hereto** 44:21 45:20
**high** 26:23
**higher** 15:21 34:6
**highways** 30:14
**Hills** 1:15

**Hispanic** 33:22
**Hispanics** 34:4
**HODGES** 1:7 45:9
**hospital** 14:6
**huge** 30:15

**I**

**ideas** 9:6
**IDENTIFICATI...**
 4:10
**impact** 14:11 21:20
 21:24,24 22:6
 28:14 34:16
**impacts** 36:13
 40:15
**important** 5:2,5,7
 15:18
**improved** 9:7
**improvements** 8:19
**include** 13:4 26:4
 26:21
**included** 7:13
 17:23 18:5
**income** 34:16,20,24
 35:4,9
**incorporated** 45:20
**increased** 28:12
**independent** 17:10
 23:7 35:2
**independently**
 18:11 23:23
**INDEX** 3:7
**indicated** 34:15
**individual** 18:10
**influence** 15:14
**information** 18:8
 18:12 21:15 23:5
 33:7
**informed** 34:21
**interested** 44:18
**Internet** 39:14
**interpretation**
 23:22
**interpreted** 23:24
**interstate** 30:13
**investigate** 25:13
**investigated** 35:11
**investigation** 35:22

**investigations**
 18:10 31:13
**involve** 12:24
**involved** 11:11
 12:5,23 13:19
**issues** 41:14
**items** 14:17

**J**

**January** 7:9,11
 11:3
**Jennifer** 2:14
**Job** 1:24
**Judge** 1:4 45:6
**July** 1:16 44:9,23
 45:15
**June** 10:22,23

**K**

**K** 1:11 2:1 3:1,4 4:1
 4:4 5:1 6:1 7:1
 8:1 9:1 10:1 11:1
 12:1 13:1 14:1
 15:1 16:1 17:1
 18:1 19:1 20:1
 21:1 22:1 23:1
 24:1 25:1 26:1
 27:1 28:1 29:1
 30:1 31:1 32:1
 33:1 34:1 35:1
 36:1 37:1 38:1
 39:1 40:1 41:1
 42:1 43:1 44:1,9
 45:1,11,14,22
**K&L** 1:14
**Kimberly** 2:5
**kind** 21:8 22:5 30:3
**kinds** 9:8 15:15,19
**knew** 10:25 12:10
**know** 4:20,23 5:16
 5:23 6:13 11:16
 17:6,7 18:2,4
 22:11,15 24:15,17
 30:13,23 31:11
 32:15,19 33:9
 34:2,8,24 35:7,19
 36:3,12,16 39:16
 39:17
**knowledge** 26:15

27:4 30:11 33:14
  35:13,14
known 16:22
knows 31:14

### L

large 42:10
Lassiter 1:15
law 19:5,9,13 21:15
  21:20 22:11,16
  36:12
led 24:19
legislation 27:8
Line 46:8,10,12,14
  46:16,18,20,22
list 17:2,16,18,23
  18:5
literature 25:24
  26:2,6,8,13
litigation 12:18
  16:4
little 5:8 6:12 7:22
  14:17 15:2 20:2,6
  26:18 30:24 37:12
  40:21
LLP 1:14
local 14:6 42:12
location 17:11
  18:13
long 5:21 10:25
longer 40:22
look 18:17 26:24
looked 24:14 27:3
  33:19
looking 41:14
looks 7:6
lot 9:5
low 34:23 35:4,9
lower 15:21 34:6

### M

making 35:16
manner 40:14
map 24:14
marked 3:8 4:10
  6:17 14:19
material 30:9 32:5
matter 34:10
matters 14:23

41:18
mean 12:13 30:11
  31:11 42:4
means 7:23
Medicaid 13:2
medications 6:5
mentioned 17:21
  19:11 36:18
met 4:14
Michael 1:4 45:6
miles 27:19 28:7,12
  28:13,14,15,16,22
  28:22 29:14,15,17
minor 37:9 38:21
  38:24
minutes 40:22
Mischaracterizes
  38:18
moment 4:14,22
money 41:18
month 10:19,23
months 11:9
morning 4:12,13
movement 20:5

### N

name 4:15 46:1,3
names 17:6 38:14
near 17:12
necessary 45:19
need 5:22 32:3,19
New 31:19
nodding 5:4
non-abortion 22:21
non-Hispanic
  33:22
nonprofit 7:18 8:2
  8:6
nontherapeutic
  18:25 23:16
North 1:15,16 36:6
  44:2,6 45:16
Northwest 2:6
Notary 1:14 44:5
  44:25
number 3:5,8 4:9
  18:13 24:25 28:10
  28:24 29:3,6,7

32:23 33:2
numbers 28:3,8
  29:20 35:7

### O

oaths 44:7
Objection 32:18
  38:19 39:6
obtain 27:21 28:25
  40:3
obtained 27:20
  40:2
obviously 28:13
  40:13
occur 40:16
office 2:10 4:17
Oh 2:11 30:25
Ohio 1:1,4 2:10
  4:16,18 11:19,20
  12:25 13:8 15:24
  17:4,13,19 18:22
  19:16,24,25 20:7
  20:12 22:3,19,20
  24:6,14,23 25:4
  26:14 27:5 29:23
  30:5,8 32:13,23
  33:3,7,24 34:6,11
  34:20,25 35:4,14
  35:24 37:20,23
  38:5,6 41:13,17
  41:22 45:3,5
okay 9:25 20:22
  39:17 40:21,23
Olsen 2:14
opinion 39:23
  41:24 42:14
opinions 14:12
opt 15:16
option 14:2
organization 13:3
  20:9
organizations 7:18
  8:3,7,17,21 9:10
  9:13,17,19,20,21
  10:2,3 22:13,15
originally 21:11
outcome 44:19
outside 8:18

overall 42:13

### P

Page 3:5,8 14:19
  26:19 46:8,10,12
  46:14,16,18,20,22
pages 44:12
paper 15:18
paragraph 14:19
  18:18,20 19:4
  21:17 22:17 23:8
  23:11 25:20,23
  26:18 27:14,16
  31:2 36:2,6 39:21
paragraphs 24:4
  24:10 25:8,16
  27:7,11
Parenthood 1:3
  11:13,18,19,22
  12:2,16 13:5,5
  17:9 19:24,25
  20:7,11 22:19,20
  34:22 45:5
Parenthoods 19:16
  38:6
Parker 2:5 3:6
  20:17,20 32:17
  38:18 39:6,16
  40:21 41:7 43:11
part 16:22 42:2,3
particular 13:18
  17:17 42:25
particularly 5:7
parties 44:18,20
parts 41:20
patients 22:25
  34:21
pending 5:25
Pennsylvania 2:6
people 11:21 35:21
percent 27:19 28:5
  28:10,16,19,24
  29:10,15,18 42:10
  42:11
percentage 35:3,8
period 29:6,9
personally 44:10
Ph.D 1:11 2:1 3:1,4

4:1,4 5:1 6:1 7:1
  8:1 9:1 10:1 11:1
  12:1 13:1 14:1
  15:1 16:1 17:1
  18:1 19:1 20:1
  21:1 22:1 23:1
  24:1 25:1 26:1
  27:1 28:1 29:1
  30:1 31:1 32:1
  33:1 34:1 35:1
  36:1 37:1 38:1
  39:1 40:1 41:1
  42:1 43:1 44:1,9
  45:1,11,14,22
Pittsburgh 25:11
plaintiff 14:2
plaintiffs 1:4 2:4
  11:17 22:7,18
  37:24 38:14 45:6
plaintiffs's 25:4,17
  38:10
Planned 1:3 11:13
  11:18,19,22,25
  12:16 13:5,5 17:8
  19:16,23,24 20:6
  20:11 22:19,19
  34:22 38:6 45:5
Planning 8:4 9:24
please 18:18 27:14
  39:10
point 5:14,22 13:9
  13:12 19:22
position 7:16
PP 20:14,16
PPFA 11:24 12:4
  19:12,18 20:3
  21:12
PPGOH 20:7,24
  21:14 23:13 25:2
  37:25 40:10
PPGOH's 39:24
PPSWO 20:12,15
  20:17,21,24 21:14
  23:13 25:2 37:25
  40:10
PPSWO's 39:24
practice 42:19,23
preceding 44:12

**predominantly** 34:23
**pregnancies** 15:16 42:17
**pregnancy** 15:9,19 15:21
**preparing** 9:14
**present** 2:14
**presumption** 29:24
**pretty** 30:12 32:10
**prevent** 39:25
**previous** 13:20 35:23
**previously** 23:15 36:8 43:3
**primarily** 8:13 24:11
**prior** 36:24 37:18 38:18 45:14
**privileges** 14:6
**probably** 34:13 35:19
**proceedings** 44:16
**process** 9:2
**produce** 12:9
**professional** 7:24 7:25
**programs** 18:24 23:15
**promotes** 13:4
**promoting** 18:24
**pronounced** 20:19
**proportion** 34:7 39:25
**proposal** 8:20 9:6,7
**proposals** 8:2,10,15 8:18,23 9:3 10:5
**provide** 10:4 17:3 17:12 18:14 21:14 22:21 40:13
**provided** 14:7 17:2 17:16,24 18:12 23:5,15 25:2 36:9 36:14 38:13
**provider** 40:5
**providers** 14:5 29:6,8
**provides** 13:3

18:21
**providing** 18:25 22:8,14 23:16 38:7 40:10
**provision** 15:14
**provisions** 14:8
**public** 1:14 36:16 44:5,25
**purpose** 19:4 31:13
**purposes** 20:13 26:7
**pursuant** 1:12
**putting** 29:16

**Q**

**qualify** 35:9
**quality** 26:23
**question** 5:10,11,13 5:15,17,25 21:3 21:23 23:21 24:19 26:17
**questions** 4:24,25 6:7,10 41:3,4,8 43:13
**quite** 27:2 31:15
**quoted** 33:17

**R**

**R** 1:4 45:6
**race** 28:20 33:18,20
**racial** 33:24 34:3
**Raleigh** 1:15 45:16
**rate** 28:19 29:9,11
**rates** 15:7,8,9,9,18 15:21 26:9,12 27:2 42:16
**reached** 37:16,18
**read** 7:20 23:2 27:22 40:7
**ready** 36:4
**reason** 6:6 46:4,8 46:10,12,14,16,18 46:20,22
**reasonable** 29:17
**recall** 11:7 20:2 28:13
**received** 22:23
**receiving** 18:22
**RECESS** 40:25

**recommendations** 9:16
**record** 4:15 19:11 39:19 46:5
**reduced** 44:13
**reduces** 36:13
**refer** 6:15 11:24 14:15 20:6,12 24:20 25:22
**reference** 5:3 37:4 38:20
**references** 38:4
**referred** 37:2
**referring** 20:8 24:21 38:8
**reflected** 14:12 24:9
**Region** 22:20
**related** 14:23 27:8 33:7 44:17
**relation** 26:25
**relationship** 27:3
**relevant** 25:23 26:5 26:20,21,22 32:5 32:14
**rely** 41:11
**relying** 42:20
**remember** 11:6,15
**remembering** 10:16
**remind** 4:22
**rephrase** 5:16 30:25
**report** 3:9 6:20,23 10:21,22 12:10 14:13,16 18:18 21:9,23 22:6 26:7 31:14 34:16 35:22 36:3,20,22 37:7 37:12 38:16,22 39:5
**reported** 1:23 44:13
**reporter** 4:25
**reports** 36:24 37:3 37:11,13,19
**represent** 32:10
**representations**

25:15 38:8,13
**representative** 31:9 31:12 32:5
**representing** 4:18
**reproductive** 14:23 15:3 41:9 42:18
**required** 22:24
**requiring** 14:5
**research** 7:18 8:2 8:10,12,15,23 9:3 9:8 10:5 17:10 23:7 26:20,21 27:8 35:2
**reserved** 45:17
**respect** 8:15 23:8 26:17 32:14
**respective** 24:22
**respects** 30:9 31:19 31:20,21 32:6 33:16 34:14
**responding** 9:14
**result** 31:25
**results** 27:17 32:12
**retained** 10:14 11:4
**review** 8:11 9:22 13:9 26:20 31:3 45:16
**reviewed** 13:13,15 23:23 25:7
**reviewers** 8:18 9:5 9:11,15,16 10:6
**reviewing** 7:25 10:4
**RICHARD** 1:7 45:9
**Richardson** 2:10 3:5 4:11,15 20:23 32:21 38:23 39:9 39:20 40:18,24 41:2 43:13
**Right** 31:23
**role** 8:8,14
**roughly** 32:12
**routinely** 8:7
**rules** 4:23
**rural** 29:4,7,10,13 32:24 34:10
**Ryan** 2:10 4:15

**S**

**sample** 42:20
**San** 8:5 9:23
**Sarah** 1:13,23 44:5 44:24 45:15
**says** 7:7,16 18:21 39:14
**seal** 45:23
**season** 10:19
**second** 18:20 23:20
**Section** 21:21
**see** 25:11
**send** 8:17
**sense** 13:17 31:17
**sentence** 18:20 23:11
**served** 13:20 34:22
**service** 28:18
**services** 7:19 8:13 14:3,7 15:14 16:8 16:14,23,25 17:3 17:5,12 22:8,14 22:22,25 23:14 25:3 26:10 28:11 36:9,15,17 38:7 39:24 40:11,14
**set** 44:11,21
**sexual** 15:10
**sheet** 45:20
**shorten** 20:5
**signing** 45:16
**similar** 8:22 12:14 26:24 32:9,12 33:16 37:19 41:20
**similarities** 31:16
**Simon** 2:15
**sitting** 13:12,17
**slightly** 29:3
**Society** 8:3 9:23
**sorry** 11:14,15 16:9 20:14 24:13 26:4 30:21,25
**sort** 24:3 38:25
**SOUTHERN** 1:1 45:3
**Southwest** 11:20 19:25 20:11 22:20
**speak** 5:3,5

**special** 31:12
**specific** 12:17 16:3 21:19 28:3 31:24 33:6 35:21 43:7
**specifically** 8:14 10:12 12:7 15:24 18:21,23 19:23 26:11,14 27:5 31:7 33:20 34:24 35:8,11,24 36:14 37:21,24
**specify** 38:22
**spend** 14:16
**spoke** 21:11
**Stanley** 1:11 2:1 3:1,4 4:1,4 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1,9 45:1 45:11,14,22
**started** 6:10
**state** 13:2,8 14:4 15:24 17:4,18 22:18 26:14 27:5 27:16 29:23 30:8 30:12,14 31:9,18 31:19 36:10 39:22 41:17 44:2,6
**statement** 21:8 23:18 24:11 26:17 31:22
**statements** 24:18 24:25 25:3,14
**states** 1:1 14:9,22 24:7 26:2 27:10 27:12 30:9,15,19 31:4,8,10,16 32:3 32:4,9,11,15

33:15 34:12,14 35:17,20 41:12,23 42:21,21,22 43:8 45:1
**status** 34:20
**statute** 13:2,10,13 13:15,18 14:2 23:21,22,24 36:7
**statutes** 13:19,23 14:4,9,11
**stayed** 29:8
**step** 20:5
**Stephanie** 2:15
**stipulations** 1:13
**stop** 22:8,13 23:16 40:10
**stopped** 38:7
**Street** 2:11
**strike** 36:21
**studied** 25:8
**studies** 12:18 16:3 26:22,24 27:3,4 27:17 28:2,7 29:21 31:3,25 33:17,19 34:9 35:19,23 41:11,24 42:20,24 43:7
**study** 26:8 28:2,4,9 28:9,17,23 29:2,4 29:4 30:3 32:16 32:19,20 33:2 34:19 36:6 37:2,4 37:6
**stylistic** 38:25
**submit** 8:16 9:4
**submitted** 6:21 10:5 36:20,22,24 37:7,19 38:17 43:3
**substantial** 39:25 42:13,15
**substantive** 39:4,11
**substantively** 36:23
**suggest** 8:19
**suggestions** 9:8
**Suite** 1:15
**summarize** 22:5 39:21

**summary** 26:2 39:22
**supervision** 44:14
**support** 13:3,8 14:4
**sure** 5:9 21:3,4 40:22
**surrounding** 24:7
**SWO** 20:17
**sworn** 4:5 44:10 45:14

———————
**T**
**take** 4:21 5:25 18:17 40:18,21 44:7
**taken** 1:12
**talk** 10:11
**talking** 6:12 11:25 19:18
**teenage** 15:9
**teenagers** 15:10
**Teleconference** 2:9
**tell** 37:10 42:9 44:10
**ten-year** 29:6
**terminate** 42:17
**terms** 30:15 42:20
**testified** 4:6 16:2 44:11
**testimony** 38:19 43:4
**Texas** 27:9 28:9,17 29:21 30:10,21 31:4,18 32:2,10 33:10 35:10,15 37:2,5 41:12
**thank** 6:4 10:9,10 19:17 20:18 26:13 41:4,6 42:18 43:11
**theretofore** 22:23
**thing** 16:5 25:10
**things** 11:7 20:5
**think** 9:25,25 10:25 11:13 14:7 15:5 17:6 21:18,22 26:23 28:15 29:16 30:23 31:14 35:12

36:25 37:12 39:3 39:16 40:19 41:10 41:25
**thought** 19:15
**three** 30:19 31:3,8 32:12 33:19 41:11 41:23
**time** 5:6,14,23 12:22 13:9,13 14:17 19:22 37:3 41:3,5
**times** 4:21
**today** 4:17,21,24 5:7,22 6:6,15 11:24 13:12,17 20:6 41:5
**today's** 20:13
**told** 16:24 19:10 23:19,20,21
**Toledo** 18:2
**top** 26:18
**transcript** 44:15 45:18
**transcription** 46:7
**transportation** 30:16 41:22 42:2
**travel** 21:25 27:18 28:6 29:12,13
**trends** 15:8
**tries** 26:8
**true** 44:15 45:17
**truth** 44:10
**truthfully** 6:8
**turned** 34:11
**two** 8:17 9:21 10:2 10:23 11:17,17 17:8 22:7 33:19 40:22
**two-minute** 40:19
**type** 30:7 32:4,22 33:2 34:19
**types** 8:10
**typewritten** 44:14
**typical** 42:19

———————
**U**
**U.S** 15:11
**Uh-oh** 39:18

**ultimately** 9:12 40:5
**understand** 5:15 6:16 10:2 11:25 12:23 14:21 15:2 16:17 20:8 21:3 21:22 22:18 24:15 29:19 31:23
**understanding** 17:15 19:3,5,8 23:4 24:5 44:17
**understandings** 24:9
**understood** 5:18 21:11
**unintended** 15:16 15:19,21
**unique** 12:18
**unit** 8:4 9:22
**United** 1:1 31:10 45:1
**University** 8:5 9:22
**unstable** 39:15
**unwanted** 40:6 42:17
**updated** 7:8,9
**updates** 7:12
**urban** 29:5,8,11 33:4 34:8,9,12,12

———————
**V**
**variability** 42:11
**various** 7:18 24:5 33:15 35:20 40:15
**verbatim** 44:13
**verified** 18:12
**video** 2:15,16 4:14 5:8
**visual** 5:4
**vs** 1:6 45:8

———————
**W**
**wait** 5:10,12,24
**WAKE** 44:3
**wanted** 31:23
**Washington** 2:6 27:9 29:2,22 30:10,21 31:4,25 32:9 33:10 35:10

35:15 41:12,16
way 12:21 20:19
  29:22 30:2,5
ways 30:8 41:19
we're 5:7 11:25
  14:16 20:8 39:17
  41:14
went 28:21 37:8,8
WESTERN 1:2
  45:3
WHEREOF 44:21
white 33:21,22 34:7
whites 34:5
WilmerHale 2:5
Wisconsin 12:15
  43:4
Witness 3:4 20:18
  20:22 39:14 41:6
  43:14 44:21 45:23
  46:3
women 15:15 21:25
  27:19 28:5,11,24
  29:12 33:22,22,23
  33:23 34:7,7,8,20
  35:3,9 38:5 40:2,4
  41:16,17 42:17
women's 28:20
wording 37:9,9
words 18:11
work 7:25 8:7
  10:12,20,24 12:14
  13:7 15:6,6,11,13
  15:22,23 21:8
  36:18
working 16:23
  19:23
wouldn't 6:6 28:15
  34:10

                X

                Y
Yeah 39:16
year 7:9,11 10:17
  42:6
York 31:19

                Z

                0

                1
1 3:9 4:9 6:18 14:19
  14:19,20 46:5
1/16 7:7
1:16-cv-539 1:3
  45:5
10 25:20 29:10,15
10:19-10:46 40:25
10:50 43:15
100 27:18 28:7,14
  28:16,22 29:17
110133 1:24
12 29:13,14
13 44:9 45:15
13th 1:16
17 27:14,16 31:2
1875 2:6
19th 44:23

                2
2 18:18 19:4 21:17
  46:6
20 27:19 28:19,23
  29:18 42:10
2000 7:16
20006 2:6
2016 1:16 44:9,23
  45:15,24
21 36:3,6
21st 10:22,23
24 28:4
25 27:19 28:5,13
  29:18 42:10
250 28:12,15
29 28:19,24

                3
3 22:17 23:9,11
  46:7
30 2:11 28:13
300 1:15
34 39:21
3701.034 21:21

                4
4 3:5,9 24:4 25:9
41 3:6

43215 2:11
4350 1:14

                5
5 24:4 26:19
50 28:21

                6
6 24:4
69 28:10,16

                7
7 24:4

                8
8 24:4 25:9

                9
9:29 1:17