IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF GREATER OHIO, and PLANNED PARENTHOOD SOUTHWEST OHIO REGION,<br><br>      Plaintiffs,<br><br>   v.<br><br>RICHARD HODGES, in his official capacity as Director of the Ohio Department of Health, and TIMOTHY INGRAM, in his official capacity as Commissioner of Hamilton County Public Health,<br><br>      Defendants. | Civil Action No. 1:16-cv-00539<br>Judge Michael R. Barrett |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE EXPERT REPORT OF DR. STANLEY K. HENSHAW**

Plaintiffs have retained as an expert Dr. Stanley Henshaw, a reproductive epidemiologist who has spent more than thirty years researching and publishing on the subject of reproductive behavior. Dr. Henshaw has authored numerous studies on abortion restrictions, and has extensive knowledge of how factors such as travel distances and poverty influence access to abortion services. He has also been admitted to testify as an expert in lawsuits challenging abortion restrictions in several other cases, including on the very issue for which Plaintiffs offer his testimony here: the effect of distance from an abortion clinic and poverty on women's ability to access abortion services.

In connection with this case, Dr. Henshaw prepared an expert report in which he expressed his professional opinion regarding the impact that the elimination of abortion services at Plaintiffs' health centers would have on the ability of women in Ohio to obtain safe, lawful

1

abortions. *See* Dkt. 43, Ex. A ("Henshaw Report" or "Report"). In his Report, Dr. Henshaw concludes that the cessation of Plaintiffs' abortion services would prevent a substantial proportion of women who otherwise would have had abortions in Ohio from obtaining them, and would lead to delayed access to abortion for other women, particularly low-income women.

On July 18, 2016, Defendant Richard Hodges ("ODH") filed a motion to exclude the Henshaw Report, challenging both the relevance of Dr. Henshaw's testimony to the disputed issues in the case and the reliability of his methodology. Dkt. 34 ("MTE"). These objections are without merit and do not justify the exclusion of the Report.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony relating to "scientific, technical, or other specialized knowledge" if such knowledge will assist in "determin[ing] a fact in issue" or in understanding the evidence. Fed. R. Evid. 702. Rule 702 further requires that admissible expert testimony be (1) based on sufficient facts or data; (2) produced using reliable principles and methods; and (3) based on the witness's reliable application of those sound principles and methods to the facts at hand. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). As the "gatekeeper" of expert testimony, the trial judge is charged with determining the admissibility of expert testimony based on relevance and reliability. *See id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Supreme Court identified four factors courts may take into account when considering the reliability of proposed expert testimony: (1) whether the expert's theory or technique can be tested; (2) whether that

2

theory has been subjected to peer review; (3) whether the technique used is known for a high rate of error; and (4) whether the theory or technique is generally accepted in a relevant scientific community. *See Manitowoc*, 484 F.3d at 429 (citing *Daubert*, 509 U.S. at 592-94). Subsequently, the Court clarified that the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case," and that the trial judge has "broad latitude to determine" the applicability of any specific factor in a particular case. *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (citing *Kumho Tire Co.,* 526 U.S. at 141, 153).

## ARGUMENT

### I. The Henshaw Report is Relevant to Plaintiffs' Undue Burden Claim

As the Court is well aware, Plaintiffs challenge the constitutionality of Section 3701.034 of the Ohio Revised Code on several grounds, including on the ground that it violates the Fourteenth Amendment in that it conditions the receipt of government funds on Plaintiffs' cessation of its abortion services. The Henshaw Report is plainly relevant to this claim as it establishes that if Plaintiffs were to succumb to the coercive pressure of Section 3701.034 and to cease providing abortions in order to continue receiving government funds, women in Ohio will be prevented from obtaining, and otherwise burdened in their efforts to obtain, abortions.

ODH attacks Dr. Henshaw's Report as lacking probative value because Plaintiffs testified that they will not stop performing abortions in response to Section 3701.034. MTE 4-5, PageID# 384-85 (arguing that Dr. Henshaw's testimony is irrelevant because it "rest[s] on the invalid assumption that [Section 3701.034] would force [Plaintiffs] to stop providing abortions"). That misses the point. As explained in Plaintiffs' reply brief also filed today (at 15), to establish a Fourteenth Amendment violation, Plaintiffs need not show or concede that they will cease performing abortions. *See Koontz v. St. John's River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2595

(2013) (affirming the applicability of the unconstitutional conditions doctrine "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right"); *see also Planned Parenthood of S. & Cent. Fla. v. Philip*, No. 4:16-cv-321-RH/CAS, slip op. at 13-14 (N.D. Fla. June 30, 2016) (the fact that an abortion provider has not, and will not, cease providing abortions "d[oes] not matter" to analysis of whether defunding law imposes unconstitutional condition (citing *Koontz*, 133 S. Ct. at 2596)). Dr. Henshaw assesses the impact that Section 3701.034 *would have* on the accessibility of abortion in Ohio if Plaintiffs ceased providing abortions, in light of the increased distances women would be required to travel to obtain an in-state abortion, the increased cost of having to travel those distances, and the delay that would result from having to travel those distances. The analysis in the Report is thus directly "relevant to the task at hand and would aid the trier of fact" in assessing the burdens Section 3701.034 seeks to impose. *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000). Accordingly, the fact that "Dr. Henshaw's conclusions … will not come to fruition" (MTE 4-5, PageID# 384-85) has no bearing on the probative value of the Report.

ODH also argues that the Henshaw Report should be excluded as irrelevant because Dr. Henshaw "has not studied the specific funding programs at issue." MTE 4, PageID# 384. The specifics of these funding programs do not, however, bear on the relevance of Dr. Henshaw's testimony. Plaintiffs did not offer Dr. Henshaw as an expert on any specific funding program or on funding programs in general. His testimony was offered with respect to the impact of the cessation of abortion services by Plaintiffs, an issue on which he plainly has expertise. Dr. Henshaw relied on information provided to him by counsel sufficient to assess the impact of Section 3701.034, including information regarding the number of abortions provided annually by

4

Plaintiffs at their Ohio health centers, the locations of other abortion providers in Ohio, and the ability of those other abortion providers to absorb Plaintiffs' patients should Plaintiffs cease providing abortions.[1] With that information, Dr. Henshaw analyzed the impact that the cessation of Plaintiffs' abortion services would have on the ability of women in Ohio to obtain abortions, in light of the relevant demographic and epidemiological literature concerning the effect of travel distance on abortion rates, particularly among low-income women. That Dr. Henshaw has not "conducted … research related to the statute" (MTE 4, PageID# 384) does not bear on the relevance of the Henshaw Report, nor its reliability. *See infra* p. 6.

Nor is the fact that Dr. Henshaw did "not … read the statute" (MTE 4, PageID# 384-85) grounds for disqualification. *See First Tenn. Bank Nat'l Ass'n*, 268 F.3d at 333 ("The fact that a proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification."). Dr. Henshaw is an expert on reproductive epidemiology, not a lawyer, and his testimony was not offered with respect to any issue on which the words of the statute are pertinent. Thus, Dr. Henshaw's failure to study the statute does not bear on the relevance of his Report.

## II. Dr. Henshaw's Methodology Is Reliable

ODH also challenges the reliability of Dr. Henshaw's methodology on two primary grounds. Neither is persuasive.

First, ODH argues that the opinion offered in the Henshaw Report is unreliable because Dr. Henshaw relied on factual information provided by counsel (specifically regarding the number of abortions performed by Plaintiffs and the capacity of alternative providers). *See* MTE

---

[1] Evidence in the record substantiates the information relied on by Dr. Henshaw in connection with his Report. *See* Dkt. 40, Ex. 1 (Declaration of Iris E. Harvey); Dkt. 40, Ex. 2 (Declaration of Jerry H. Lawson); Dkt. 40, Ex. 5 (Third Declaration of Iris E. Harvey); Dkt. 40, Ex. 6 (Third Declaration of Jerry H. Lawson); Dkt. 41 (Declaration of Terrie Hubbard); Dkt. 42 (Declaration of W.M. Martin Haskell).

5

5-6, PageID# 385-86.  Yet "it is not uncommon for an expert to rely on data presented by the party who hired him as a basis of his expert analysis." *Marathon Petroleum Co. L.P. v. Midwest Marine, Inc.*, 906 F. Supp. 2d 673, 692 (E.D. Mich. 2012); *see also Worthington Cylinder Corp. v. Schrader-Bridgeport Int'l, Inc.*, No. 2:12-cv-554, 2014 U.S. Dist. LEXIS 44610, at *21 (S.D. Ohio Apr. 1, 2014) ("[T]here is nothing wrong with an informed individual relying upon the data and conclusions offered by other informed individuals.").  Nor is it inappropriate for an expert to rely on information from counsel about the law.  *See supra* p. 5.

Nothing about Dr. Henshaw's reliance on information provided by counsel here undermines the soundness of his methodology.  To the contrary, Dr. Henshaw "relied upon studies, his own experience … his background … and upon literature and information furnished him by [P]laintiff[s'] attorney," all of which the Sixth Circuit has recognized as "the type of material that expert witnesses often rely upon in forming opinions." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 853 (6th Cir. 1981).  The data relied on by Dr. Henshaw originated from Plaintiffs and other abortion providers in Ohio, all of whom are indisputably "informed individuals" regarding issues of abortion access in the state.  *Worthington Cylinder Corp*, 2014 U.S. Dist. LEXIS 44610, at *21.  Tellingly, ODH does not challenge the accuracy of any piece of information relied upon by Dr. Henshaw—only that he did not "independently verify" the data.  That is simply not grounds for excluding his Report.

Second, ODH suggests that the Henshaw Report is unreliable because Dr. Henshaw extrapolates from studies performed in states other than Ohio and does not undertake independent analysis of conditions specific to Ohio.  *See* MTE 7, PageID# 387.  But it was entirely proper for Dr. Henshaw to rely on the studies conducted in Georgia, Texas, and Washington to reach conclusions about the impact of diminished capacity of abortion providers

6

and increased travel on the availability of abortion in Ohio. As Dr. Henshaw explained in his deposition, it is the "general practice" in the field of reproductive epidemiology to conduct studies in a particular geographic area and then apply them to another area. *See* Dkt. 48-1 ("Henshaw Tr.") 42:18-43:2. And, Dr. Henshaw explained, relying on studies in these specific states to draw conclusions about Ohio was appropriate here, because "[t]he basic issues we're looking at, which is distance and cost, affects everyone. It's not going to be different for women in Washington State [than it is for] for women in Ohio, because money matters to all of them. It's going to be a barrier [to getting an abortion]." Henshaw Tr. 41:9-20. Furthermore, he explained, these states are "similar enough" in the relevant respects to permit extrapolation, *id.* 31:23-32:15, and any differences between the states—such as the ratio of urban to rural areas, the poverty rate, racial distribution, etc.—would not be relevant to his analysis, *id.* 32:9-35:25; *see also id.* 31:23-32:15 ("Washington and Texas and Georgia represent a pretty … good cross-section of states in the country. The results are roughly similar in those three areas. There's nothing about Ohio that's different in any relevant respect from those other states that I know of."). Accordingly, conducting state-specific research would not add anything to his analysis, and was not necessary to produce reliable results. *See* Henshaw Dep. Tr. 34:6-14. In fact, Dr. Henshaw has twice been admitted to testify as an expert on similar topics (in Wisconsin and Alabama) based on the studies in these same three states; the courts there did not require that Dr. Henshaw conduct state-specific surveys. Henshaw Dep. Tr. 43:3-10; *see Planned Parenthood of the Se. v. Strange*, No. 2:13-cv-405 (M.D. Ala.); *Planned Parenthood of Wis., Inc. v. Van Hollen*, No. 3:13-cv-465 (W.D. Wis.).

Moreover, this Court has recognized under similar circumstances that experts may rely on studies conducted in other states to reach conclusions about the potential impact of a law in

7

Ohio. In *Ohio Organizing Collaborative v. Husted*, No. 2:15-cv-1802, 2016 U.S. Dist. LEXIS 85633 at *7 (S.D. Ohio May 24, 2016), the Court admitted expert testimony that assessed potential voter disenfranchisement from changes to Ohio's voting laws based on an examination of studies conducted on voting trends in past elections in North Carolina and Georgia. Although the plaintiffs in that case argued that the experts failed to account for differences in "the nature of midterm and general elections in North Carolina and Georgia" and "the differences between those states and Ohio," the Court pointed to the quantitative analysis conducted by the experts as an acceptable scientific foundation, finding that the use of numbers from other states and election years "does not change the fact that [the experts'] studies and opinions have a reasonable factual basis." *Id*. at *15-16. Likewise here, Dr. Henshaw's methodology—which involved extrapolating from studies in other states to reach conclusions about the impact of a law in Ohio—is entirely sound, and certainly does not render the Henshaw Report inadmissible.[2]

## CONCLUSION

For the reasons described above, the Henshaw Report conforms to all the requirements of admissible expert testimony. Accordingly, the Court should deny ODH's motion to exclude the Report.

Respectfully submitted,

/s/Jennifer L. Branch

| | |
|---|---|
| Helene Krasnoff | Jennifer L. Branch # 0038893 |
| Carrie Y. Flaxman | *Trial Attorney for Plaintiffs* |
| Planned Parenthood Federation of America | Alphonse A. Gerhardstein # 0032053 |
| 1110 Vermont Avenue, NW, Suite 300 | GERHARDSTEIN & BRANCH CO. LPA |
| Washington, D.C. 20005 | 432 Walnut Street, Suite 400 |
| (202) 973-4800 | Cincinnati, Ohio 45202 |
| (202) 296-3480 (fax) | (513) 621-9100 |

---

[2] If anything, Dr. Henshaw's choice "not [to] engage in individual testing or examination … go to the weight to be afforded his testimony and not its admissibility." *Worthington Cylinder Corp.*, 2014 U.S. Dist. LEXIS 44610 at *21*; see also id*. at *23-24 ("[T]he fact that [the expert] could have engaged in a different methodology does not invariably render the methodology he did employ unreliable.").

helene.krasnoff@ppfa.org  
carrie.flaxman@ppfa.org  

Paul R.Q. Wolfson  
Kimberly A. Parker  
WILMER CUTLER PICKERING  
   HALE AND DORR LLP  
1875 Pennsylvania Avenue NW  
Washington, DC 20006  
(202) 663-6000  
(202) 663-6363 (fax)  
paul.wolfson@wilmerhale.com  
kimberly.parker@wilmerhale.com  

(513) 345-5543 (fax)  
agerhardstein@gbfirm.com  
jbranch@gbfirm.com  

Alan E. Schoenfeld  
WILMER CUTLER PICKERING  
   HALE AND DORR LLP  
7 World Trade Center  
250 Greenwich Street  
New York, NY 10007  
(212) 937-7294  
(212) 230-8888 (fax)  
alan.schoenfeld@wilmerhale.com  

*Counsel for Plaintiffs Planned Parenthood of Greater Ohio and Planned Parenthood Southwest Ohio Region*

July 27, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2016, I caused true and correct copies of the foregoing to be served via ECF and Federal Express on counsel for Defendant Richard Hodges.

/s/ Paul R.Q. Wolfson
Paul R.Q. Wolfson
*Attorney for Plaintiffs Planned Parenthood of Greater Ohio and Planned Parenthood Southwest Ohio Region*